Plaintiff filed this suit in the Civil District Court for the Parish of Orleans against defendant for $1,000, with interest and attorney's fees, representing the amount due on an account. Defendant answered pleading payment. After a trial of the case on its merits, there was judgment in favor of plaintiff as prayed for, from which judgment defendant has taken this appeal.
The following facts are not disputed: During December, 1946, and January, 1947, the Robinson Distributing Company (of which defendant is the proprietor) was indebted to plaintiff on certain accounts numbered W-317, W-338, and W-339. It is not necessary to consider the last two mentioned accounts, as the same have since been paid in full. The records of plaintiff show that defendant still owes a balance of $1,000, with interest and attorney's fees, on account W-317, which is the subject matter of the present suit.
During December, 1946, defendant, who was the holder and owner of certain promissory notes of one Carl Shaddock, payable to the Robinson Distributing Company and secured by vendor's liens and chattel mortgages on movable property, negotiated or assigned said notes, "with recourse," to plaintiff, Coin Machine Acceptance Corporation. The notes, in principal, aggregated more than $100,000.
Shaddock defaulted in payment, and Robinson, becoming apprehensive because of his own liability on the notes, requested plaintiff to foreclose on the chattel mortgages. Plaintiff advised defendant that it would be willing to proceed against Shaddock, if defendant would deposit $1,000 to be applied to the expenses of the foreclosure, including attorney's fees. Plaintiff was given to understand that Robinson was anxious to have the proceedings instituted as quickly as possible, because Robinson knew of a buyer in Shreveport who was willing to take the mortgaged property for a price in excess of the amount *Page 371 
due on Shaddock's notes, but that the prospective purchaser would not wait indefinitely. Plaintiff promised to institute the proceedings in a few days.
On December 27, 1946, Robinson sent plaintiff a check, accompanied by a communication reading in part as follows:
"We are enclosing our check for $1000 as partial payment to indemnify you against any losses or expenses incurred in your foreclosure proceedings against Carl Shaddock, doing business as the Shreveport Novelty Company."
On January 3, 1947, plaintiff advised Robinson that it would do everything it could to "hold down" the legal expenses, and that plaintiff was submitting the Shaddock matter to its Chicago counsel for transmission to a New Orleans attorney for attention. On January 23, 1947, the Chicago attorneys ultimately dispatched the claim to Mr. Arthur F. Babin, Jr., an attorney of New Orleans, who, however, did not accept the employment until January 29, 1947.
On January 28, 1947, Robinson became impatient over the delay and addressed a communication to plaintiff reading as follows:
"On December 27, we sent a thousand — dollar check to Mr. Fiorda, which was to have been partial fee for the risky Shaddock foreclosure in Shreveport. Will you please apply that $1000 against our account W-317? Thanking you, we are, yours very truly, Robinson Distributing Company."
No foreclosure or other proceedings were ever instituted, because on February 7, 1947, Shaddock made a dation en paiement to plaintiff of the movables on which the chattel mortgages rested, in full settlement of the indebtedness on the notes. Mr. Babin's bill for fees and expenses amounted to $1,722.93, which was paid by plaintiff.
The sole question involved is whether the plaintiff is entitled to the $1,000 as a payment on the Shaddock notes, or whether Robinson had the right to require its application to account W-317, as directed in the communication of January 28, 1947.
Briefly, plaintiff's argument is that Robinson, in making the advance of $1,000, specifically imputed it to the Shaddock indebtedness, upon which he was secondarily liable, and that he could not afterward validly direct plaintiff to apply the money to any other account. Counsel say that a debtor specifying the account to which a payment is to be imputed has no legal right to change the application of the payment.
In support of his contention, counsel cites several codal articles and authorities, none of which are deemed applicable to this case.
We cannot agree with counsel that the thousand dollars was intended to be an unequivocal payment on the Shaddock indebtedness. The letter of transmittal recites that it was a "partial payment to indemnify you against any loss or expenses incurred in your foreclosure proceedings," and there is nothing in the record to indicate that either of the parties, at the time, considered that the money would serve other than as a deposit meant to indemnify plaintiff against loss by reason of legal expenses. It was brought home to plaintiff that speedy action was necessary, and plaintiff promised full cooperation and demanded the $1,000 to protect it for expenses. Of course, plaintiff, being the holder of the notes, could have taken its own time in instituting proceedings, but when we consider the circumstances under which the deposit was made by defendant, we conclude plaintiff owed him the duty and obligation of instituting proceedings within a reasonable time, so that defendant could have protected himself by disposing of the property to his advantage. The impatience shown by Robinson because of the delays can readily be well understood; according to his testimony, he called plaintiff's Chicago office on several occasions by long distance telephone complaining of plaintiff's lack of cooperation. The last call was made on January 28, 1947, up to which date the local attorney had not even accepted employment. This last call was unavailing, as plaintiff gave defendant no satisfaction whatever.
We think that a delay of thirty days was unreasonable and not in accord with the specific understanding under which the money was sent to plaintiff, and our opinion *Page 372 
is that Robinson had the absolute right to abrogate his indemnity agreement and to require that the $1,000 be imputed to account W-317.
Defendant has made out his plea of payment, and, accordingly, the judgment appealed from is reversed and plaintiff's suit is dismissed at its cost.
Reversed.